UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

TOVA ZACHARY, individually and on behalf   :
of others similarly situated,   :
           Plaintiff,   :
   :
v.   :
   :
BG RETAIL, LLC,   :
         Defendant.   :

---------------------------------------------------------------x

**OPINION AND ORDER**

22 CV 10521 (VB)

Briccetti, J.:

Plaintiff Tova Zachary brings this putative class action against her former employer, defendant BG Retail, LLC, alleging defendant failed to pay her and the putative class wages on a weekly basis in violation of Section 191(1)(a) of the New York Labor Law ("NYLL"), and failed to provide her and the putative class a wage notice at the time of hire in violation of Section 195(1)(a) of the NYLL.

Now pending is defendant's motion to dismiss the amended complaint pursuant to Rules 12(b)(1) and 12(b)(6), or, alternatively, to strike the class allegations pursuant to Rule 12(f). (Doc. #19).

For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d).

## BACKGROUND

For the purpose of ruling on the motion, the Court accepts as true all well-pleaded factual allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor, as summarized below.

1

Defendant allegedly operates "branded retail establishments" in New York State, such as Famous Footwear and Naturalizer stores, at which it employs manual workers.  (Doc. #18 ("Am. Compl.") ¶ 4).  Plaintiff contends she worked for defendant from approximately February through November 2018 at its Central Valley, New York, location.  Plaintiff claims her job duties included "stocking shelves, moving inventory, receiving, unpacking, organizing, storing, packaging, and labeling merchandise, and generally remaining on her feet for the entirety of her shift."  (Id. ¶ 8).  Because allegedly more than twenty-five percent of plaintiff's workday involved performing manual tasks, she claims she is considered a "manual worker" within the meaning of NYLL Section 190(4).

Defendant purportedly paid plaintiff and similarly situated manual workers[1] biweekly; i.e., every other week.  As a result, plaintiff alleges defendant violated NYLL Section 191, which requires employers to pay manual workers on a weekly basis, unless the New York State Department of Labor authorizes the employer to pay less frequently.  NYLL § 191(1)(a)(i), (ii).

Plaintiff asserts she was injured by being "temporarily deprived of money owed to her." (Am. Compl. ¶ 9).  As a result, she allegedly "could not save, invest, earn interest on, or otherwise use these monies that were rightfully hers," and was prevented from purchasing groceries, paying rent and utility bills, and making other routine payments "to provide for [her] basic needs."  (Id. ¶¶ 9–11).  She also purportedly lost the "time value" of wages delinquently paid.  (Id. ¶ 9).

---

[1]     Plaintiff defines the proposed class as "workers who qualify as manual laborers and who were employed by [defendant] between April 29, 2016 and the present" in New York.  (Am. Compl. ¶ 1).

In addition, defendant allegedly failed to provide, at the time of plaintiff's hire or any time thereafter, a wage notice informing her of her rate of pay and regular pay day, among other information required by NYLL Section 195(1)(a).

**DISCUSSION**

I.    <u>Standard of Review</u>

A.    <u>Rule 12(b)(1)</u>

A district court must dismiss an action pursuant to Rule 12(b)(1) "for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it." <u>Conn. Parents Union v. Russell-Tucker</u>, 8 F.4th 167, 172 (2d Cir. 2021).

When deciding a Rule 12(b)(1) motion at the pleading stage, the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor," except for "argumentative inferences favorable to the party asserting jurisdiction." <u>Buday v. N.Y. Yankees P'ship</u>, 486 F. App'x 894, 895 (2d Cir. 2012) (summary order).  To the extent a Rule 12(b)(1) motion places jurisdictional facts in dispute, the district court may resolve the disputed jurisdictional fact issues by referring to evidence outside the pleadings.  <u>Amidax Trading Grp. v. S.W.I.F.T. SCRL</u>, 671 F.3d 140, 145 (2d Cir. 2011).

In addition, when a defendant moves to dismiss for lack of subject matter jurisdiction and on other grounds, the Court should consider the Rule 12(b)(1) challenge first.  <u>Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n</u>, 896 F.2d 674, 678 (2d Cir. 1990).

B.    <u>Rule 12(b)(6)</u>

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under "the two-pronged approach" articulated by the Supreme Court in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009).  First, a plaintiff's legal conclusions and "[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

C.      Rule 12(f)

Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Motions to strike are generally looked upon with disfavor." Chenensky v. N.Y. Life Ins. Co., 2011 WL 1795305, at *1 (S.D.N.Y. Apr. 27, 2011). Motions to strike class allegations prior to class certification are "even more disfavored" because they seek "to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." Id. Thus, unless a motion to strike class allegations "addresses issues separate and apart from the issues that will be decided on a class certification motion," the

motion should be denied as premature.  Chen-Oster v. Goldman, Sachs & Co., 877 F. Supp. 2d

113, 117 (S.D.N.Y. 2012).

II.     Standing

Defendant argues plaintiff has not alleged an actual, concrete injury sufficient to confer

standing.

The Court disagrees with respect to plaintiff's late wages claim (the "Section 191

Claim"), but agrees with respect to plaintiff's wage notice claim (the "Section 195 Claim").

A.     Legal Standard

"The 'irreducible constitutional minimum' of standing in federal court requires:

(1) 'injury in fact'; (2) that is 'fairly traceable' to a defendant's challenged conduct; and (3) that

is 'likely to be redressed' by a favorable decision."  Mejia v. Time Warner Cable Inc., 2017 WL

3278926, at *7 (S.D.N.Y. Aug. 1, 2017) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–

61 (1992)).  "To support standing, an injury must be both 'concrete and particularized.'"  Id.

(quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016)).  Indeed, "a 'bare' statutory violation

is insufficient to confer constitutional standing absent some 'concrete' harm."  Id. (citing

Spokeo, Inc. v. Robins, 578 U.S. at 341); see also TransUnion LLC v. Ramirez, 141 S. Ct. 2190,

2205 (2021) ("Only those plaintiffs who have been concretely harmed by a defendant's statutory

violation may sue that private defendant over that violation in federal court.").

Further, "[s]tanding is not dispensed in gross."  Lewis v. Casey, 518 U.S. 343, 358 n.6

(1996).  "Rather, a plaintiff must demonstrate standing for each claim he seeks to press."  Davis

v. Fed. Election Comm'n, 554 U.S. 724, 734 (2008).  The Second Circuit has interpreted this as a

requirement that a party's injury-in-fact "must be particular to the claim raised."  Fed. Treasury

Enter. Sojuzplodoimport v. SPI Spirits Ltd., 726 F.3d 62, 80 (2d Cir. 2013).

Courts in this Circuit "have commonly held that the temporary deprivation of money to which a plaintiff has a right constitutes a sufficient injury in fact to establish Article III standing" to assert a claim for the late payment of wages. Espinal v. Sephora USA, Inc., 2022 WL 16973328, at *3 (Nov. 16, 2022) (collecting cases), report and recommendation adopted, 2023 WL 2136392 (S.D.N.Y. Feb. 21, 2023).

For a wage notice claim, bare allegations that an employer violated the statute are deemed "[t]echnical statutory violations" insufficient to confer standing. See, e.g., Sevilla v. House of Salads One LLC, 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022). To demonstrate injury-in-fact, a plaintiff must allege she suffered concrete harm resulting from the employer's failure to provide the notice. See Mateer v. Peloton Interactive, Inc., 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022).

B.    Section 191 Claim

As to the Section 191 Claim, plaintiff alleges she was temporarily deprived of wages to which she was legally entitled and thus lost the time value of this money, which satisfies Article III's injury-in-fact requirement. See, e.g., Ramirez v. Urion Constr. LLC, __ F. Supp. 3d __, 2023 WL 3570639, at *7 (S.D.N.Y. May 19, 2023) (collecting cases) (finding "workers paid on an untimely basis necessarily incur a concrete harm due to the time value of money and thus have standing to claim damages" under Section 191). This is because "[t]he loss of the time value of money owed to plaintiff is not a harm that might occur, but one that has occurred." Rankine v. Levi Strauss & Co., 2023 WL 3582323, *3 (S.D.N.Y. May 22, 2023).

Moreover, plaintiff goes beyond what is required by Supreme Court and Second Circuit precedent and alleges defendant's delayed wage payments prevented her from spending money on everyday expenses such as groceries, rent, and utility payments. See Levy v. Endeavor Air

Inc., 638 F. Supp. 3d 324, 330 (E.D.N.Y. 2022) (finding plaintiffs had standing to pursue Section 191 claim because "[t]he delay in receiving wages stripped plaintiffs of the opportunity to use funds to which they were legally entitled").

Accordingly, plaintiff has adequately pleaded an injury-in-fact to establish standing for the Section 191 Claim.[2]

C.      Section 195 Claim

As to the Section 195 Claim, plaintiff lacks standing because she fails to allege any concrete downstream injuries stemming from defendant's statutory failure to provide her a wage notice.  Cf. Lipstein v. 20X Hosp. LLC, 2023 WL 6124048, at *9 (S.D.N.Y. Sept. 19, 2023) (plaintiffs who were prevented from "realizing their true hours worked," "realizing they were underpaid," and "taking appropriate action to obtain the payments due to them" established standing to pursue a Section 195 claim).

In opposing the motion, but notably absent as an allegation in the amended complaint, plaintiff claims she "would have known upon her hiring that Defendant intended to pay her pursuant to an illegal scheme" if she had been properly provided with the notice.  (Doc. #24 at 6).  However, with respect to the timing of payments, NYLL Section 195(1)(a) only requires disclosure of the employer's regular pay day.  Plaintiff did not need a wage notice to discover

---

[2]      Defendant requests the Court "issue an Order clarifying that the appropriate measure of damages is liquidated damages on the lost time value of money" because defendant is "entitled to understand the contours of its potential exposure in order to make informed decisions as to its litigation strategy."  (Doc. #20 ("Def. Mem.") at 10–11).  Defendant is "entitled" to no such ruling at this early stage.  The request to limit plaintiff's damages is denied as premature.  See Espinal v. Sephora USA, Inc., 2022 WL 16973328, at *4 (plaintiffs asserting Section 191 claim "have pled that they suffered some concrete and particularized injury, even [if] the injury is later found to be minimal"); Georgiou v. Harmon Stores, Inc., 2023 WL 112805, at *7 (E.D.N.Y. Jan. 5, 2023) (declining to bar plaintiff, at the motion to dismiss stage, from seeking liquidated damages of 100% of the late-paid wages on a Section 191 claim because "a motion to dismiss is addressed to a claim—not a form of damages").

she was being paid every other week.  And it is speculative to claim plaintiff, even if she

received and reviewed the wage notice, would have deduced defendant was not paying her

timely, because Section 195 does not require disclosure of the legally mandated payment

schedule for manual workers.  See Quieju v. La Jugueria Inc., 2023 WL 3073518, at *2

(E.D.N.Y. Apr. 25, 2023) (dismissing wage notice and statement claims because "[e]ven if

plaintiff had read such forms (which is itself speculation), the form would likely have confirmed

the amount of money he actually received while working for defendants" and "[t]hese forms

don't tell the employee what the minimum wage is, or that overtime and spread of hours are

required by law").

Accordingly, the Section 195 Claim must be dismissed because plaintiff fails to allege an

injury-in-fact related to this claim.

III.   Private Right of Action Under NYLL Section 191

Defendant argues the Section 191 Claim must be dismissed for failure to state a claim

because Section 191 does not confer an express or implied private right of action.

The Court disagrees.

A.   Legal Standard

Federal courts applying state law "are generally obliged to follow the state law decisions

of state intermediate appellate courts."  Broder v. Cablevision Sys. Corp., 418 F.3d 187, 199–200

(2d Cir. 2005).  However, such rulings can be disregarded if the Court "is convinced by other

persuasive data that the highest court of the state would decide otherwise."  DiBella v. Hopkins,

403 F.3d 102, 112 (2d Cir. 2005).  For example, a federal court may "look to the language of

other jurisdictions on the same issue and other sources the state's highest court might rely upon"

in order to "undertake the imprecise but necessary task of predicting on a reasonable basis how

the New York Court of Appeals would rule." Id. at 112–13.  Further, when there is "an apparent

split in authority among the Appellate Divisions," a federal court is not bound by the law of the

department that would apply if the case were filed in state court where the federal court sits, but

rather must predict "how the Court of Appeals would rule."  Michalski v. Home Depot, Inc., 225

F.3d 113, 116–17 (2d Cir. 2000).

Section 191, which is part of article 6 of the NYLL, provides:  "A manual worker shall be

paid weekly and not later than seven calendar days after the end of the week in which the wages

are earned."   An employee who is "paid less than the wage to which . . . she is entitled" under

the provisions of article 6 may bring a "wage claim" pursuant to Section 198(1-a) of the NYLL

("Section 198"), "to recover the full amount of any underpayment" as well as "reasonable

attorney's fees, prejudgment interest . . . and, unless the employer proves a good faith basis to

believe that its underpayment of wages was in compliance with the law," an additional payment

of "liquidated damages equal to one hundred percent of the total amount of the wages found to

be due."

New York appellate courts are split on whether Section 191, in conjunction with Section

198, confers a private right of action.  To date, the New York Court of Appeals has not

confronted this question.

1.      The First Department

In Vega v. CM & Associates Construction Management, LLC ("Vega"), in which the

plaintiff was paid biweekly, the Appellate Division, First Department, found the combination of

Section 191 and Section 198 provides an express and implied private right of action to prosecute

late payments violative of Section 191.  175 A.D.3d 1144 (1st Dep't 2019).

First, regarding an express private right of action, the <u>Vega</u> court determined an employer makes an "underpayment" for purposes of Section 198 when it "violates the frequency requirements" of Section 191, even if the employee is later fully paid, because "[t]he moment that an employer fails to pay wages in compliance with section 191(1)(a), the employer pays less than what is required" by the statute.  <u>Id</u>. at 1145.  The <u>Vega</u> court discussed Supreme Court precedent holding the liquidated damages provision of the federal Fair Labor Standards Act supplied remedies when an employer "fail[s] to pay the statutory minimum on time, in order to provide compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages."  <u>Id</u>. at 1145–46 (quoting <u>Brooklyn Sav. Bank v. O'Neil</u>, 324 U.S. 697, 707 (1945)).  Noting the absence of "meaningful differences" between the liquidated damages provisions of the federal and New York State wage laws, and the overlapping aims of those two laws "to deter wage-and-hour violations in a manner calculated to compensate the party harmed," the <u>Vega</u> court concluded "liquidated damages may be available under [Section 198] to provide a remedy to workers complaining of untimely payment of wages."  <u>Id</u>. at 1146.

Acknowledging that "[t]he employer may assert an affirmative defense of payment if there are no wages for the 'employee to recover,'" the First Department rejected the notion that payment of the delinquent wages prior to the employee bringing suit vitiated the alleged statutory underpayment.  <u>Vega</u>, 175 A.D.3d at 1145 (citing Section 198).  Foreclosing an employee's express private right to sue in these circumstances would enable employers "to evade the statute" and, the <u>Vega</u> court reasoned, "eviscerate the employee's statutory remedies."  <u>Id</u>.  Accordingly, <u>Vega</u> ruled Section 198 "expressly provides a private right of action for a violation of" Section 191.  <u>Id</u>. at 1146.

Going further, the First Department ruled a private right of action may be implied because manual workers, like the <u>Vega</u> plaintiff, are "one of the class for whose particular benefit the statute was enacted," and recognizing such implied right "promote[s] the legislative purpose" of Section 191 to "protect workers who are generally dependent upon their wages for sustenance," as well as the legislative purpose of Section 198 "to deter abuses and violations of the labor laws." <u>Vega</u>, 175 A.D.3d at 1146.  Similarly, the court determined that implying a private right of action was "consistent with the legislative scheme" because "section 198 explicitly provides that individuals may bring suit against an employer for violations of the labor laws, even if the Commissioner chooses not to do so." <u>Id</u>. at 1146–47.

        2.    <u>The Second Department</u>

The Appellate Division, Second Department, recently reached the opposite conclusion in <u>Grant v. Global Aircraft Dispatch, Inc.</u> ("<u>Grant</u>"), holding neither an express nor implied private right of action existed for employees to sue for violations of Section 191. __ N.Y.S.3d __, 2024 WL 172900 (2d Dep't Jan. 17, 2024).  In <u>Grant</u>, a manual worker who was purportedly paid biweekly sued his employer seeking only liquidated damages, interest, and attorneys' fees pursuant to Section 198 because he "acknowledge[d] that he was paid his wages in full." <u>Id</u>. at *3.

As for an express private right of action, the <u>Grant</u> court determined, directly contrary to <u>Vega</u>, that a late payment was not an "underpayment" within the meaning of Section 198, because an employee who receives a late payment has not "received a lesser amount of earnings than agreed upon." <u>Grant</u>, 2024 WL 172900, at *3.  Although "an agreed-upon pay schedule between an employer and a manual worker" providing for biweekly wage payments "violates the frequency of payments requirement" in Section 191, the <u>Grant</u> court concluded this circumstance

11

was "not equivalent . . . with a nonpayment or underpayment of wages." Id. at *3.  Moreover,

considering how the Grant plaintiff sought only liquidated damages, the court explained Section

198 "clearly contemplate[d] recovery of an underpayment as the primary, foundational remedy"

such that "the recovery of liquidated damages is dependent upon the recovery of an

underpayment." Grant, 2024 WL 172900, at *3.

In support of the absence of an express private right, Grant examined the legislative

history of Section 198, including amendments to the statute in 2010 as part of the Wage Theft

Prevention Act "to require courts to allow employees to recover the full amount of any

underpayment." Grant, 2024 WL 172900, at *5.  Citing the bill jacket, the court noted the

amendments were necessary because "current penalties for wage theft were so low that there was

a financial incentive [for employers] to underpay workers." Grant, 2024 WL 172900, at *5.  The

Second Department interpreted this legislative history to reveal that Section 198 "was aimed at

remedying employers' failure to pay the amount of wages required by contract or law" and noted

the legislative history lacked any reference "to the frequency or timing of wage payments." Id.

Accordingly, the Second Department concluded Section 198 did not confer an express private

right of action to prosecute violations of Section 191.

Also contrary to Vega, the Second Department held the existence of "multiple official

enforcement mechanisms for violations of Labor Law § 191" meant no private right to sue for

violations of the statute could be implied. Grant, 2024 WL 172900, at *5.

The Grant court discussed the recent New York Court of Appeals ruling in Konkur v.

Utica Academy of Science Charter School ("Konkur"), which declined to find an implied private

right for violations of a different provision of the NYLL prohibiting wage kickbacks.  38 N.Y.3d

38 (2022).  In Konkur, the Court of Appeals held the plaintiff was a member of the class the anti-

kickback statute was designed to protect and that establishing an implied right would promote the objective of article 6 of the NYLL "to strengthen the rights of employees." Id. at 41. However, the anti-kickback law, which originated as a penal statute but was amended to add administrative enforcement power to seek civil penalties, did not satisfy the test for implying a private right of action because "the Legislature specifically considered and expressly provided for enforcement mechanisms in the statute itself." Id. at 41-42. Notably, in so holding, the Konkur court distinguished the kickback statute from "the substantive provisions of Labor Law article 6," like Section 191, which "generally regulates payment of wages by employers and creates reciprocal rights of employees." Id. at 44. Based on this language, the dissenting opinion in Konkur observed that the majority opinion "suggest[s] that section 191 contains the entirety of privately cognizable claims." Id. at 49 n.2 (Rivera, J., dissenting).

One panel member in Grant filed a dissent, disagreeing with the majority and siding with Vega that "the late payment of wages is tantamount to a nonpayment or underpayment of wages, which permits recovery under" Section 198. Grant, 2024 WL 172900, at *7 (Christopher, J., concurring in part and dissenting in part). The dissent argued "[m]oney later is not the same as money now," id., and cited with approval several recent federal decisions that declined to reject Vega based on Konkur. Id. at *8. Contrary to the Grant majority, the dissenting justice also believed an implied right of action was not foreclosed by the existence of other enforcement mechanisms because Section 198 plainly permits individual suits for violations of the labor laws as well as official enforcement mechanisms to remedy the same violations. Id. (citing Vega, 175 A.D.3d at 1147).

B.      Analysis

Although this Court cannot predict with certainty how the New York Court of Appeals would rule, the reasoning in <u>Vega</u> and the dissent in <u>Grant</u> persuade the Court that the Court of Appeals would likely agree with <u>Vega</u> and reject <u>Grant</u>.

As to an express private right of action, this Court agrees with the First Department that an employee is underpaid within the meaning of Section 198 each time her employer is required, under Section 191, to pay her for one week of wages and instead pays her nothing on that date. Although Section 198 does not explicitly reference late wage payments, its text authorizes employees to bring "wage claims" for "underpayment[s]" violative of article 6 of the NYLL, and article 6 includes the pay frequency requirements in Section 191. Therefore, the absence of language in Section 198 addressing late payments is irrelevant.

In fact, the plain language of Section 191 discredits the <u>Grant</u> court's view that Section 198's enforcement mechanism is not triggered when an employer and manual worker agree to a biweekly payment schedule. NYLL Section 191(2) provides that "[n]o employee shall be required as a condition of employment to accept wages at periods other than as provided in this section." A judge's belief that a manual worker should be able to agree to a different payment schedule, and that such agreement should obviate an employer's liability for failing to comply with the law, does not override an overt legislative judgment to the contrary.

Moreover, this Court's interpretation of the applicable legislative history supports the outcome reached in <u>Vega</u>. As the <u>Grant</u> majority acknowledges, money has a real time value, and the 2010 amendments to Section 198 were intended to allow employees "to recover the full amount of any underpayment." <u>Grant</u>, 2024 WL 172900, at *5. In addition, the stated

14

legislative purposes of the 2010 amendments—i.e., to enhance penalties for wage theft and benefit low-wage workers struggling to support their families—are unquestionably better served by a private right to enforce Section 191 than by requiring injured employees to submit administrative complaints and hope for an official enforcement action.

Furthermore, this Court agrees with Vega that a late wage claim under Section 191 is privately actionable even if that right is not expressly codified in the NYLL.

Under New York law, an implied private right of action can be inferred from a statute when: (i) "the plaintiff is one of the class for whose particular benefit the statute was enacted," (ii) "recognition of a private right of action would promote the legislative purpose," and (iii) "creation of such a right would be consistent with the legislative scheme."  Konkur v. Utica Acad. of Sci. Charter Sch., 38 N.Y.3d at 41.  "[A]ll three factors must be satisfied before an implied private right of action will be recognized."  Id.

The Grant majority did not dispute that the first and second factor were satisfied when an employee is paid twice monthly in violation of Section 191, but determined, based on Konkur, that creation of an implied private right of action would be inconsistent with the legislative scheme because  "multiple official enforcement mechanisms" exist to enforce violations of Section 191.  Grant, 2024 WL 172900, at *5.  However, in Konkur, the Court of Appeals distinguished the anti-kickback statute, from which a private right could not be inferred, from the "substantive provisions of Labor Law article 6," like Section 191, which "regulates payment of wages by employers and creates reciprocal rights of employees."  Konkur, 38 N.Y.3d at 44. More broadly, the fact that Konkur analyzes a wholly separate provision in the NYLL led several federal courts, prior to Grant, to adhere to Vega and imply a private right of action to address Section 191 violations notwithstanding Konkur.  See, e.g., Rosario v. Icon Burger Acquisition

15

LLC, 2022 WL 17553319, at *5 (E.D.N.Y. Dec. 9, 2022) ("[S]everal district courts within this Circuit have already analyzed this issue and all have concurred that Konkur does not affect the core holding of Vega."). Thus, this Court agrees with the dissent in Grant that Konkur does not suffice to overcome the sound reasoning of Vega that a private right to enforce Section 191 violations may be implied.

Finally, the two legislative proposals referenced by defendant in its supplemental briefing addressing Grant (Doc. #32) are not persuasive evidence that the New York Court of Appeals would reject Vega. Of course, if either of these proposals become law, the Court of Appeals would be obliged to follow them. However, based on the state of the law today, the Court is persuaded that an unlawfully late payment of wages is an "underpayment" within the meaning of Section 198, rendering violations of Section 191 privately actionable.

Accordingly, the Section 191 Claim may proceed.

IV.    Motion to Strike Class Allegations

Defendant argues plaintiff's class allegations should be stricken because the putative class comprises an impermissible "fail-safe" class.

The Court disagrees.

"A fail-safe class is one whose definition shields the putative class members from receiving an adverse judgment" because "the class itself is defined in a way that precludes membership unless the liability of the defendant is established." Mazzei v. Money Store, 288 F.R.D. 45, 55 (S.D.N.Y. 2012). In such circumstances, courts have "broad discretion to modify the class definition as appropriate." In re LIBOR-Based Fin. Instruments Antitrust Litig., 299 F. Supp. 3d 430, 464–65 (S.D.N.Y. 2018). However, "a determination of whether Rule 23 requirements are met is more properly deferred to the class certification stage, when the court has

before it a more complete factual record from which to make its determination." Greene v. Gerber Prods. Co., 262 F. Supp. 3d 38, 53 (E.D.N.Y. 2017).

Defendant argues the class "cannot be defined until [there is] a finding on the issue of liability" (Def. Mem. at 16) because class members are limited to employees "who qualify as manual laborers" under NYLL Section 190(4). (Am. Compl. ¶ 1). According to defendant, "the question of whether any given employee performed physical tasks for more than 25% of their respective workday requires a fact intensive inquiry into the duties the specific employee performed," requiring individualized determinations on defendant's liability as to each class member and transforming the putative class into an impermissible fail-safe class. (Def. Mem. at 16).

Defendant is incorrect. Its liability for purposes of the Section 191 Claim turns on whether defendant timely paid its manual workers. Conversely, whether a particular employee is a manual worker because physical tasks comprise at least twenty-five percent of their duties bears on whether the putative class satisfies the commonality and predominance requirements of Rule 23. Fed. R. Civ. P. 23(a)(2), (b)(3). Therefore, the motion to strike is procedurally premature because it is based on grounds that are not "separate and apart from the issues that will be decided on a class certification motion." See Chen-Oster v. Goldman, Sachs & Co., 877 F. Supp. 2d at 117. Moreover, at this time, defendant has not demonstrated "it would be impossible to certify the alleged class regardless of the facts Plaintiffs may be able to obtain during discovery." Mayfield v. Asta Funding, Inc., 95 F. Supp. 3d 685, 696 (S.D.N.Y. 2015).

Accordingly, the motion to strike must be denied. Defendant may re-assert its arguments, if appropriate, at the class certification stage.

**CONCLUSION**

The motion to dismiss is GRANTED IN PART and DENIED IN PART.

The Section 191 Claim may proceed.

The Section 195 Claim is dismissed.

By February 26, 2024, defendant shall file an answer to the amended complaint.

By separate Order, the Court will schedule an initial conference.

The Clerk is instructed to terminate the motion.  (Doc. #19).

Dated: February 12, 2024
       White Plains, NY

                              SO ORDERED:

                              _____
                              Vincent L. Briccetti
                              United States District Judge

18